AO 91 (Rev. 5/85) Criminal Complaint

**ORIGINAL**

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF GEORGIA**

**ATLANTA DIVISION**

**FILED IN CHAMBERS**

FEB 1 3 2012

**UNITED STATES OF AMERICA**

v.

**NEMIAS CINTORA-GONZALEZ,**
  a.k.a. Cristobal Mata Aleman,
  a.k.a. Diego,
**JORGE ARMANDO-REYES,**
  a.k.a. Jose Roberto Gusman Vasquez,
  a.k.a. Jose Gusman,
  a.k.a. Chapito,
**EDGAR CINTORA-GONZALEZ,**
  a.k.a. Edgar Lintgra Gonzalez,
  a.k.a. Gordo,
**VICTOR HUGO MORALES-AVILA,**
  a.k.a. Victor Avila Morales,
  a.k.a. Victor,
**ISRAEL EDGARDO REVERA-PACHECO,**
  a.k.a. Isreal Riveria,
  a.k.a. Juan,
**BRENDA PEREZ,**
  a.k.a. Brenda Ramirez-Crisp

**CRIMINAL COMPLAINT** *MAGISTRATE JUDGE* **U.S. MAGISTRATE JUDGE N.D. GEORGIA**

Case No.: 1-12-MS-0155

I, Sean Cooper, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about February 2, 2012, in Cobb County, in the Northern District of Georgia, the defendants listed above:

did knowingly and intentionally possess with the intent to distribute controlled substances, that is, methamphetamine and cocaine, Schedule I controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C); and

being aliens unlawfully and illegally in the United States, did knowingly possess a firearm in and affecting interstate commerce, in violation of Title 18, United States Code, Sections 922(g)(5) and 924(a)(2) (**this charge does not pertain to Brenda Perez**).

I further state that I am a Special Agent with the Drug Enforcement Administration, and that this complaint is based on the following facts: Please see attached affidavit.

Continued on the attached sheet and made a part hereof.

( x ) Yes ( ) No

_____
Signature of Complainant
DEA Special Agent Sean Cooper

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendants have committed it. Sworn to before me, and subscribed in my presence

February 13, 2012            at     Atlanta, Georgia
Date                                             City and State

ALAN J. BAVERMAN
United States Magistrate Judge                          _____
Name and Title of Judicial Officer                    Signature of Judicial Officer

AUSA Michael V. Herskowitz

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Sean Cooper, a Special Agent with the Drug Enforcement Administration

("DEA"), United States Department of Justice, being first duly sworn, depose and

state under oath as follows:

## INTRODUCTION

1.      I am a Special Agent with the Drug Enforcement Administration and have

worked as such since November 2009.  I am currently assigned to the Atlanta Field

Division, Enforcement Group One. Prior to that, I served as an enlisted and

commissioned officer in the United State Army Military Police Corps, Department of

Defense (DOD) for 16 years.

2.      Upon joining the DEA, I received approximately 19 weeks of training at

the DEA Training Academy in Quantico, Virginia.  This training addressed the

methods by which drug traffickers possess and distribute controlled substances; the

manner and means in which they conceal and launder the proceeds from the distribution

of controlled substances; the manner and means in which they protect their proceeds

and their controlled substances; and the manner and means by which drug traffickers

attempt to avoid law enforcement detection of their activities.   The controlled

substances as to which this training applied included but were not limited to marijuana,

cocaine, heroin, and methamphetamine.

1

3.     During my law enforcement career, I have written and/or executed numerous search, seizure and arrest warrants pertaining to the seizure of all types of criminal evidence such as illegal drugs, drug paraphernalia, drug records, drug proceeds and evidence of other types of crimes and arrests of individuals involved in drug trafficking activities.  I have received specialized training in the enforcement of drug laws, with an emphasis on drug trafficking and drug organizations.  I have participated in multiple drug cases, some of which have been Title III investigations, involving drug trafficking activities and have become familiar with the patterns of activity of drug traffickers, the types and amounts of profits made by drug dealers, and the methods, language, and terms that are used to disguise the source and nature of the profits from their illegal drug dealings.  I have received specialized training in the use of electronic surveillance, including wiretaps, and I have participated in multiple wiretap investigations conducted under Title III.

4.     Based upon my training and experience, interviews I have conducted with defendants, informants, and other witnesses to, or participants in, drug trafficking activity, I am familiar with the ways in which drug traffickers conduct their business, including the various means and methods by which drug traffickers import and distribute drugs, their use of cellular telephones, digital displaying pagers, and calling cards to facilitate drug activity, and their use of numerical codes and code words to

2

conduct their transactions. In my experience, drug traffickers often obtain cellular telephones in fictitious names and/or the names of third parties in an effort to conceal their drug trafficking activities from law enforcement. I am also familiar with the ways in which drug traffickers conceal, convert, transmit, and transport their drug proceeds, including, but not limited to, the use of couriers to transport currency and proceeds, the use of third-parties and nominees to purchase or to hold title to assets, and the use of money remitters and nominee recipients of the currency sent via money remitters.

5.     The following information has been derived from my personal participation in the investigation, examination of reports and records, surveillance operations, and various other sources of information. Some of the information contained in this affidavit was made known to me by other law enforcement agents who also participated in the investigation of this case. Where this affidavit states an opinion or belief, the opinions and beliefs are based upon my familiarity with this information, as well as my experiences in other drug trafficking cases and training I have received. I have not included in this affidavit every fact known to me relating to this investigation, and instead include only those facts necessary to establish probable cause for a Criminal Complaint against the following subjects for violations of federal laws:

- **Brenda Perez**, a.k.a. Brenda Ramirez Crisp (DOB: 1-1-1982);

3

- **Jorge Armando-Reyes**, a.k.a. Jose Roberto Gusman Vasquez, a.k.a. Jose Gusman, a.k.a. Chapito  (DOB: 2-26-79);

- **Edgar Cintora-Gonzalez**, a.k.a. Edgar Lintgra Gonzalez, a.k.a. Gordo  (DOB: 2-8-87);

- **Nemias Cintora-Gonzalez**, a.k.a. Cristobal Mata Aleman, a.k.a. Diego (DOB: 5-31-82);

- **Victor Hugo Morales-Avila**, a.k.a. Victor Avila Morales, a.k.a. Victor (DOB: 1-3-78); and

- **Israel Edgardo Rivera-Pacheco**, a.k.a. Isreal Rivera, a.k.a. Juan (DOB: 3-21-84);

  namely, 21 U.S.C. Sections 841(a)(1) and 841(b)(1)(C) **(all defendants)** and 18 U.S.C. Sections 922(g)(5) and 924(a)(2) **(all defendants except for Brenda Perez).**

6.     Throughout this affidavit, I have referred to particular telephone conversations, which were intercepted pursuant to court orders.   First, the conversations intercepted were primarily in Spanish.  Since I do not speak Spanish, I have not personally listened to and reviewed the recordings of the intercepted conversations.  However, I am aware that Spanish speaking monitors listened to all of the pertinent calls and prepared English language summaries and/or transcripts of the

4

conversations. The transcripts, unless stated otherwise, that were used to prepare this affidavit have not been finalized; it is likely that changes may result when the transcripts are later reviewed. Further, summaries and quotations from the summaries used to prepare this affidavit are preliminary and tentative. As a result, it is likely that changes to the summaries and quotations may occur during the preparation of the transcripts. Third, the parenthetical characterizations, which accompany the intercepts described below are based on my and other agents' training, experience and involvement in this and other investigations.

## THE INVESTIGATION

7.      The DEA Atlanta office is investigating a Mexico-based drug trafficking and money laundering organization with ties to Atlanta, Georgia; Houston, Texas; Florida; and North and South Carolina.   During the investigation, DEA agents identified **Nemias Cintora-Gonzalez** as a local methamphetamine/cocaine supplier for the organization.   Agents learned that **Nemias Cintora-Gonzalez** has an outstanding arrest warrant out of Henry County, Georgia for drug trafficking related charges.

8.      On January 18, 2012, the Honorable Thomas W. Thrash, Jr., United States District Court for the Northern District of Georgia, signed an order authorizing the interception of wire communications over a cellular telephone designated as "Target

Telephone #13" and used by both **Nemias Cintora-Gonzalez** and his cousin/drug associate **Jorge Armando-Reyes.**

9.    On January 27, 2012, Judge Thrash signed an order authorizing the renewed interception of wire communications over a cellular telephone designated as "Target Telephone #11" and used by **Nemias Cintora-Gonzalez.**

10.    During the course of intercepting two of **Nemias Cintora-Gonzalez's** telephones, agents learned that **Nemias Cintora-Gonzalez** would travel to Houston, Texas and return to the Atlanta area with cocaine or methamphetamine. Agents also learned, through physical surveillance, wiretaps, and geo-location data, that **Nemias Cintora-Gonzalez** resided with **Jorge Armando-Reyes, Israel Edgardo Rivera-Pacheco, Victor Hugo Morales-Avila,** and **Edgar Cintora-Gonzalez** at an apartment located at 2550 Cumberland Blvd SE, Apt. 812, Smyrna, Georgia ("the Subject Residence"). **Brenda Perez** signed the lease agreement as the tenant for the Subject Residence, but also maintains a separate residence.

11.    On January 26, 2012, agents intercepted telephone calls between a Hispanic male named "Victor" (later identified as **Victor Hugo Morales-Avila**), who was at that time using Target Telephone #13, and his girlfriend "ANA" in Mexico. During the calls, **Victor Hugo Morales-Avila** informed ANA that he was "approaching Georgia to Roberto location" (referring to **Jorge Armando-Reyes)**.

6

ANA asked **Victor Hugo Morales-Avila** "Did you already cross?" (into the United States from Mexico) and **Victor Hugo Morales-Avila** affirmed. Later in the conversation, **Victor Hugo Morales-Avila** indicated that he would be working for "Roberto's cousin – the boss" (referring to **Nemias Cintora-Gonzalez)**. Based on your affiant's knowledge, training, and experience, I believe **Victor Hugo Morales-Avila** illegally crossed over the U.S./Mexico border into the United States and drove with **Nemias Cintora-Gonzalez** from Houston, Texas to the Atlanta area to work with the drug trafficking organization (DTO).   I also believe that **Victor Hugo Morales-Avila** planned to temporarily reside at the Subject Residence.

12.    On January 26, 2012, and between January 30, 2012 and February 2, 2012, agents established daily surveillance at the Subject Residence to observe **Nemias Cintora-Gonzalez** and his associates.   During surveillance, agents identified a 2007 White Honda Accord, VIN: 1HGCM56317A064022, LIC: BRQ3324, registered to Cristobal Mata Aleman (an alias for **Nemias Cintora-Gonzalez**), 2153 Cottage CT SW, Marietta Georgia, parked outside of the Subject Residence.

13.    On January 27, 2012, agents intercepted two telephone calls between **Nemias Cintora-Gonzalez**, using Target Telephone #13, and a drug customer known only as "LA TORTA."  During the calls, **Nemias Cintora-Gonzalez** was extremely

upset with LA TORTA and threatened to "kick his ass" over a $2,700 drug debt which LA TORTA owed **Nemias Cintora-Gonzalez**.

14.     On February 2, 2012, agents intercepted calls which revealed that **Nemias Cintora-Gonzalez** planned to harm LA TORTA the following morning. For instance, at 4:00 p.m., agents intercepted a call between **Nemias Cintora-Gonzalez**, using Target Telephone #11, and an individual named "JOSE." During the call, **Nemias Cintora-Gonzalez** complained of "the dude" who owes him money (believed to be LA TORTA). **Nemias Cintora-Gonzalez** stated "I already found him and tomorrow I am going to go his house there ... I am going to be waiting for him and see at what time he is going to arrive." **Nemias Cintora-Gonzalez** explained: "I already have everything there and I was only missing ...another car driven by another guy but I found it."

15.     **Nemias Cintora-Gonzalez** continued: "because you see several cars are needed to go there so that in case of any problem, they can get away and then the fireworks are thrown away." **Nemias Cintora-Gonzalez** stated: "I will have to do an enhanced interrogation on him . . . perhaps cut his fingers." **Nemias Cintora-Gonzalez** concluded: "that is why I am taking a bunch of people, four on the exit (believed to be four accomplices to surround LA TORTA's residence) for anything." Based upon my training and experience, I believe that **Nemias Cintora-Gonzalez** intended to use, as part of the plan to harm LA TORTA, several vehicles to transport

guns (referred to in coded language as "fireworks") including an escape vehicle in case problems arise with the operation.

16.    Based upon these calls, agents conducted surveillance and observed **Nemias Cintora-Gonzalez, Jorge Armando-Reyes, Edgar Cintora-Gonzalez, Victor Hugo Morales-Avila**, and **Israel Edgardo Rivera-Pacheco** returning to the Subject Residence with food.

17.    While monitoring **Nemias Cintora-Gonzalez**, agents intercepted another call between **Nemias Cintora-Gonzalez** and a drug customer which indicated that the customer was traveling to the Subject Residence to purchase "two balls" (code for two ounces of methamphetamine) from **Nemias Cintora-Gonzalez**.

18.    At approximately 5:54 p.m., agents observed a Ford Mustang travel into the Walton Grove Apartment complex and park outside the Subject Residence. A male subject entered the Subject Residence, remained inside for approximately 15 minutes, exited, and departed the area in the Ford Mustang.

19.    Shortly thereafter, the Georgia State Patrol (GSP) performed a traffic stop of the Ford Mustang for a traffic violation. During a consent search of the vehicle, the trooper located two (2) ounces of suspected methamphetamine and one ounce of marijuana from inside of the vehicle. A field-test revealed positive results for the above controlled substances.

9

20.    The above male, who was seen entering the Subject Residence minutes prior to the traffic stop, admitted to interviewing agents that he purchased the methamphetamine from "Diego" at the Walton Grove apartment complex in exchange for $1,600 in U.S currency. I know from the investigation that "Diego" is another alias for **Nemias Cintora-Gonzalez**. This male also mentioned to interviewing agents that he saw five individuals and six guns in the Subject Residence when he had purchased the drugs from that evening.

21.    Soon thereafter, agents observed **Edgar Cintora-Gonzalez** transferring two large black bags with handles from the trunk of the 2007 white Honda Accord, previously identified on surveillance and registered to Cristobal Mata Aleman, a.k.a. **Nemias Cintora-Gonzalez**, into the trunk of a white Suzuki Verona, registered to a Sofia Sanchez. Agents then observed **Edgar Cintora-Gonzalez** walk back toward the Subject Residence.

22.    At approximately 9:20 p.m., the Honorable Russell G. Vineyard issued a search warrant for the Subject Residence.  Later that evening, at approximately 10:45 p.m., agents and officers executed the search warrant at the Subject Residence.

23.    Upon approach to the Subject Residence, agents encountered **Victor Hugo Morales-Avila** in the parking lot talking on the telephone. Agents asked for **Victor Hugo Morales-Avila's** identification and address inside the apartment

10

complex. **Victor Hugo Morales-Avila** motioned in the direction of the 800 building and the entryway leading to Apartment 812.

24. Concurrently, a DEA tactical team entered the Subject Residence, encountered **Nemias Cintora-Gonzales** and **Brenda Perez** in the master bedroom, **Jorge Armando-Reyes** and **Israel Edgardo Rivera-Pacheco** in the living room, and **Edgar Cintora-Gonzales** in the kitchen. Agents secured all of these individuals for officer safety and consolidated them in the living room.

25. Once the residence was secure, agents and officers outside the Subject Residence asked **Victor Hugo Morales-Avila** to lead them to the apartment he lived in, which was in fact the Subject Residence. While gathering biographical information, **Jorge Armando-Reyes** indicated that **Victor Hugo Morales-Avila** was his friend.

26. During the search of the Subject Residence, agents seized the following items from the following locations:

**Living Room:**

a. 1 KAHR CW40 40 caliber Handgun (SN# FD3231) with loaded magazine – found between sofa cushions;

b. 1 Beretta 92F 9mm Handgun (SN# C630352) with loaded magazine – found between sofa cushions;

11

   c.  1 Glock 26 9mm Handgun (SN#DP2115) with loaded magazine - found between sofa cushions;

   d.  1 Astra A100 9mm Handgun (SN#7421C) with loaded magazine – found between sofa cushions (at least one of the above-mentioned firearms were sticking out of the cushions in plain view);

   e.  2 large yellow crowbars;

   f.  1 large yellow bolt cutter;

   g.  1 Black ZAP stun gun;

   h.  1 Metro PCS Touch Phone (belonging to **Israel Edgardo Rivera-Pacheco**);

   i.  1 Boost Touch Phone (belonging to **Jorge Armando-Reyes**);

   j.  1 Samsung cell phone SCH-R631 (FCC ID#A3LSCHR631);

   k.  1 Nokia Cell Phone 1616-ZB.

**Bedroom 2:**

   a.  Undetermined amount of counterfeit U.S. Currency – found in orange shoe box in closet;

   b.  1 Large bundle of suspected counterfeit U.S. Currency;

   c.  1 Clear plastic bag containing approximately 32 grams of suspected methamphetamine – found in white shirt pocket in closet;

   d.  1 Clear plastic bag and 1 brown bag containing approximately 34 grams of

suspected cocaine – found in white shirt pocket in closet;

e.  2 Plastic bags containing approximately 74 grams of suspected cocaine – found in jacket pocket in the closet;

f.  1 Plastic bag containing approximately 46 grams of suspected methamphetamine – found in the closet;

g.  4 plastic bags containing approximately 78 grams of suspected marijuana – found in the closet;

h.  1 Black police cap – found in the closet on the shelf;

i.  1 Black Nylon Swiss Arms holster – hanging in the closet;

j.  1 Santa Muerte book;

k.  1 Silver Fuzion digital scale Model # FW-650;

l.  Miscellaneous documents;

m. 2 Boost mobile, Blue Motorola cell phones;

n.  1 LG Metro PCS cell phone;

o.  1 Samsung T-Mobile cell phone;

p.  1 Motorola 410 cell phone without back plate;

q.  1 LG wireless FM cell phone;

r.  1 Samsung Verizon cell phone;

s.  1 9mm magazine loaded with ten rounds;

t.  1 Smith & Wesson 9 mm handgun (SN#TEW9379) with loaded magazine;

u.  Public Storage documents in the name **Jorge Armando Reyes** found in the closet;

v.  A letter written in Spanish to **Jorge Armando Reyes** from his brother Manuel Anjel Guzman from prison in Karnes City, Texas found in the closet;

w.  Wells Fargo banking documents for **Brenda Perez** found in the closet;

x.  Gainsco Auto Insurance policy information for the 2007 Honda Accord mentioned above, a 2007 Nissan Titan, and a 2004 Lincoln Aviator for Cristobal Mata Aleman found in the closet;

y.  Money Transfer receipts sent from Mexico to **Victor Hugo Morales-Avila** found in the closet.

**Bedroom 3:**

a.  2 clear plastic bags with suspected cocaine;

b.  1 plastic wrapping of marijuana;

**Master Bedroom:**

a.  Black Boost Touch Phone (**Nemias Cintora-Gonzalez**);

b.  Apple I-Phone (**Brenda Perez**);

14

**Hallway:**

a. Stun Gun Camniks 928

27.    Incident to arrest, agents conducted a search of the arrestees' persons and seized the following:

- **Nemias Cintora-Gonzales:** $1,023 in U.S. Currency;

- **Victor Hugo Morales-Avila**: One clear bag containing approximately 32 grams of suspected cocaine;

- **Jorge Armando-Reyes**: $1,303 in U.S. Currency

28.    Based wire intercepts and surveillance as referenced above, agents searched and discovered the following evidence in the 2004 White Suzuki Verona:

- o    1 clear wrapping containing suspected cocaine;

- o    1 clear zip lock bag with two zip lock inside bags containing suspected cocaine;

- o    1 pill bottle containing suspected cocaine;

- o    1 Black M11 9 mm handgun (SN#86-0017796);

- o    1 Pelouse Dymo Digital Scale SP5 (SN#SP5B00041535);

- o    2 Black Totes;

- o    1 Cobray Magazine;

15

o    33 rounds of 9 mm ammunition;

o    1 black ski mask;

o    1 black puritan turtle neck long sleeve shirt;

o    1 pair of black Wells Lamont Gloves;

o    1 black M-4 Assault (SN#VS22877) AP15 (Aero Precision) Rifle;

o    1 black and brown AK47 762 (SN#BT1380);

o    1 one black gun bag containing four (4) magazines with rounds;

o    1 black Targus bag found in the trunk of the vehicle containing: zip ties, screwdriver, master padlock, 2 plastic baggies containing 7.62X39 ammunition, plastic baggies containing .38 Special with ammunition, two boxes of 7.62 X39 ammunition, gray Elite Tobogan, black Tobagan mask, white sock containing three magazines and a plastic baggie containing .45 caliber and .380 auto caliber rounds, and one 9 mm magazine;

o    1 black handgun containing 5 magazines and ammunition with tan holster;

o    1 silver and black CZ 83 Cal. 9 Browning Court hand gun (SN#A31425);

o    1 silver and black Jennings Nine 9mm handgun (SN#1407828);

o    1 black AK47 762 Rifle (SN#1-89117-08);

o    1 Smith & Wesson .38 Special 10-6 (SN#68201);

16

- o     1 CA1 Georgia VT Helwan 9mm Semi-Automatic pistol with loaded magazine;

- o     1 Blue Lewis N. Clark bag found in the trunk of the vehicle containing: 1 brown tactical plate carrier condor, 1 black bullet proof vest N-Force, 6 AK47 loaded magazines, 3 empty AR15 magazines, 4 pistol magazines (2 loaded, 2 empty), 3 boxes 7.62X39 ammunition, 1 box of .40 S&W Remington ammunition, 1 box of 9mm Tulammo ammunition, and 1 box 9 mm Luger Federal ammunition;

- o     1 AK47 Draco 7.62X39 Semi-Automatic Rifle (SN#DC-8970-11-RO);

- o     1 CZ 75 Phantom 9X19 Semi-Automatic Pistol (SN#A536865);

- o     1 LLAMA 9 mm Semi-Automatic Pistol (SN# 476850).

29.    **Jorge Armando-Reyes, Edgar Cintora-Gonzalez, Nemias Cintora-Gonzalez, Victor Hugo Morales-Avila,** and **Israel Edgardo Rivera-Pacheco** are all believed to be illegally and unlawfully present in the United States.  Immigration and Customs Enforcement (ICE) holds have been placed on these individuals.

30.    Agents field-tested a sample of the narcotics recovered in the Subject Residence which revealed positive results.  Based upon the wire intercepts, seizure of drugs from the Ford Mustang, contraband including packaging materials and scale found in the Subject Residence, I believe that the illegal narcotics found in the Subject

17

Residence were primarily intended for distribution and sale.

31.   The KAHR firearm found in the living room of the Subject Residence was manufactured in the State of Massachusetts (with a production and assembly operations plant in Worchester, MA), and thus traveled in interstate commerce.   I also believe that the LLAMA pistol, found in the vehicle, was manufactured in Spain and thus also traveled in interstate commerce.