# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL CASE NO. 1:12-cr-00078-ODE-RGV |
| NEMIAS CINTORA- GONZALEZ and JORGE ARMANDO-REYES | |

## MAGISTRATE JUDGE'S FINAL REPORT, RECOMMENDATION, AND ORDER

Defendants Nemias Cintora-Gonzalez ("Cintora-Gonzalez"), a/k/a Cristobal Mata Aleman and Diego, and Jorge Armando-Reyes ("Armando-Reyes"), a/k/a Jose Roberto Gusman Vasquez, Jose Gusman, and Chapito, are charged along with four co-defendants in a nine-count indictment with conspiring to possess and possessing, with the intent to distribute, cocaine and methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(ii), 841(b)(1)(A)(viii), 841(b)(1)(C), and 18 U.S.C. § 2; with knowingly possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), 924(c)(1)(B)(i), and 2; with knowingly possessing a firearm while being an illegal alien, in violation of 18 U.S.C. §§ 922(g)(5) and 924(a)(2); and with possessing, with the intent to defraud,

counterfeit U.S. currency, in violation of 18 U.S.C. § 472. [Doc. 49].[1] Armando-Reyes is also charged in count five of the indictment with possessing a firearm after a felony conviction, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). [Id. at 6-7].[2] Pending before the Court are Cintora-Gonzalez's motions to suppress, [Docs. 98 & 99],[3] and Armando-Reyes' motions to suppress, [Docs. 91 & 111]. Following an evidentiary hearing on the pending motions to suppress, Cintora-Gonzalez and Armando-Reyes advised the Court that they would not be filing any post-hearing briefs, and the pending motions are therefore ready for ruling. For the following reasons, it is hereby **RECOMMENDED** that Cintora-Gonzalez and Armando-Reyes' motions to suppress, [Docs. 91, 98, 99, & 111], be **DENIED**.

A.   <u>**Cintora-Gonzalez's Motions to Suppress, [Docs. 98 & 99]**</u>

On April 24, 2012, Cintora-Gonzalez filed a motion to suppress evidence seized pursuant to the search of an apartment and two vehicles conducted on February 2, 2012, arguing that the searches violated his Fourth Amendment rights.

---

[1] The listed document and page numbers in citations to the record in this Report and Recommendation refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

[2] The indictment also includes a forfeiture provision. [Doc. 49 at 10-14].

[3] On May 15, 2012, Cintora-Gonzalez filed a second motion to suppress, [Doc. 110], which he now moves to withdraw, [Doc. 129]. Having considered Cintora-Gonzalez's motion to withdraw, [Doc. 129], the motion is hereby **GRANTED** and the second motion to suppress, [Doc. 110], is terminated.

[Doc. 98]. On the same day, Cintora-Gonzalez also filed a motion to suppress intercepted communications. [Doc. 99]. At the pretrial conference held on April 25, 2012, the Court informed counsel for Cintora-Gonzalez that the motions to suppress, [Docs. 98 & 99], were not sufficiently specific and granted defendant an opportunity to perfect his motions by May 14, 2012. See [Doc. 101]. On May 15, 2012, Cintora-Gonzalez filed a second motion to suppress evidence seized during the search of the apartment, but he only addressed the narrow issue regarding whether the law enforcement officers violated the Fourth Amendment knock-and-announce requirement codified at 18 U.S.C. § 3109, when they entered and searched the apartment. See [Doc. 110].[4] The Court conducted an evidentiary hearing on the pending motions to suppress on June 19, 2012, and established a post-hearing briefing schedule. See [Doc. 121 at 61-62]. Counsel for Cintora-Gonzalez subsequently informed the Court that she did not wish to brief the issue of the reasonableness of the search of the apartment, [Doc. 131], and on August 7, 2012, Cintora-Gonzalez moved to withdraw the second motion to suppress, [Doc. 129], which the Court has granted herein, see *supra*, at 2 n.3. Thus, Cintora-Gonzalez's

---

[4] In his second motion to suppress, Cintora-Gonzalez noted that the government had indicated that "no items from the search of the vehicles would be introduced as evidence against [him]," see [Doc. 110 at 1], and he therefore made no further arguments regarding the search of the two vehicles.

initial motions to suppress, [Docs. 98 & 99], are the only motions on his behalf that remain pending for the Court's consideration.

In the pretrial scheduling order entered in this case on April 2, 2012, the Court specifically advised the parties in relevant part as follows:

> When a party fails to supplement or perfect a motion within the time afforded after having requested or been given an opportunity to supplement or perfect said motion, the Court may deem the original motion abandoned or withdrawn.

[Doc. 85 at 15 ¶ G]. Cintora-Gonzalez was directed to perfect his initial motions to suppress, [Docs. 98 & 99], by May 14, 2012, see [Doc. 101]; however, he only perfected the narrow issue regarding the entry and search of the apartment, see [Doc. 110], which he has now withdrawn, see [Doc. 129]. Indeed, Cintora-Gonzalez made no further arguments regarding the search of the two vehicles initially raised in his motion to suppress, see [Docs. 98 & 110], and he did not perfect his motion to suppress intercepted communications, [Doc. 99], and specifically advised the Court at the evidentiary hearing held on June 19, 2012, that he would not be perfecting that motion, see [Doc. 121 at 63]. Accordingly, the Court deems all issues initially raised in Cintora-Gonzalez's motions to suppress, [Docs. 98 & 99], that were not subsequently raised in his perfected motion, [Doc. 110], that has now been withdrawn, to have been abandoned and hereby **RECOMMENDS** that the motions,

[Docs. 98 & 99], be **DENIED**.[5]  See United States v. Reyes, Criminal Case Nos. 1:11–cr–00009–ODE–RGV, 1:11–cr–00060–ODE–RGV, 2011 WL 7070980, at *1 n.1 (N.D. Ga. Aug. 29, 2011), adopted by 2012 WL 176488, at *6 (N.D. Ga. Jan. 19, 2012); United States v. Elder, Criminal Action File No. 1:10–CR–132–RWS/AJB, 2010 WL 5656687, at *3 (N.D. Ga. Dec. 16, 2010), adopted in part by 2011 WL 294507, at *7 (N.D. Ga. Jan. 27, 2011); United States v. Rodriguez-Alejandro, 664 F. Supp. 2d 1320, 1327 n.3 (N.D. Ga. 2009), adopted at 1326; United States v. Arias, Criminal File No. 1:05-CR-197-1-TWT, 2007 WL 2422034, at *1 (N.D. Ga. Aug. 21, 2007), adopted at 1.

**B.     Armando-Reyes' Motions to Suppress, [Docs. 91 & 111]**

On April 23, 2012, Armando-Reyes filed his initial motion to suppress evidence, [Doc. 91], in which he moved to suppress all evidence seized as a result of a search of his apartment pursuant to a search warrant that occurred on February 2, 2012, asserting that the search was in violation of his Fourth Amendment rights.

---

[5] Even if the issues raised in Cintora-Gonzalez's initial motions to suppress, [Docs. 98 & 99], were not treated as abandoned, the motions are insufficient as a matter of law. United States v. Damiani, Criminal Action File No. 1:10–CR–519–AT/AJB, 2011 WL 7574628, at *6 (N.D. Ga. Sept. 23, 2011), adopted by 2012 WL 983726, at *1 (N.D. Ga. Mar. 20, 2012). Indeed, "[a] motion to suppress must in every critical respect be sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that a substantial claim is presented. . . . A court need not act upon general or conclusory assertions. . . ." Id. (second and third alterations in original) (citation and internal marks omitted). Cintora-Gonzalez's motions are "boilerplate motion[s] which fail[] to assert facts (as opposed to legal conclusions) which if proven would entitle[] him to relief," id., and are therefore due to be denied for this additional reason.

[Id. at 1-2]. He also argued that "there may have been material omissions in the affidavit supporting the warrant that affected the magistrate's decision to issue the warrant" and he therefore requested a hearing "where the government [would] be required to prove that the arrest and search were not committed in violation of the Fourth Amendment." [Id. at 2]. At the pretrial conference held on April 25, 2012, the Court advised Armando-Reyes that his motion to suppress was deficient and granted him an opportunity to perfect his motion, see [Doc. 101], which he did on May 18, 2012, [Doc. 111]. In his supplemental motion to suppress, Armando-Reyes raised two issues: (1) that the search of his apartment was in violation of the Fourth Amendment knock-and-announce requirement codified at 18 U.S.C. § 3109, and (2) that documents seized from his vehicle are due to be suppressed because the "warrantless search of his vehicle was conducted without consent and not pursuant to a lawful exception to the search warrant requirement." [Id.]. Therefore, any issues initially raised in his original motion to suppress, [Doc. 91], but not raised in his perfected motion to suppress, [Doc. 111], are hereby deemed abandoned. See United States v. Adigun, Criminal Case No. 1:10–cr–00202–RWS–RGV, 2011 WL 2194253, at *1 n.1 (N.D. Ga. May 4, 2011), adopted by 2011 WL 2198308, at *1 (N.D. Ga. June 3, 2011).

On June 19, 2012, the Court held an evidentiary hearing on the pending motions to suppress. See [Doc. 121].[6] The evidence presented at the hearing showed that no items were seized from Armando-Reyes' vehicle. See [id. at 52, 57-61]. Thus, even "[a]ssuming *arguendo* that there was an illegal search of the vehicle, nothing was seized which could have constituted 'fruit of the poisonous tree' to be suppressed according to the doctrine derived from the Fourth Amendment." Hardy v. United States, Nos. 1:08–CV–90027 WLS, 1:05–CR–22 WLS, 2008 WL 8126040, at *3 (M.D. Ga. Oct. 14, 2008), adopted by 2010 WL 4260212, at *3 (M.D. Ga. Oct. 21, 2010) (citation omitted). Therefore, Armando-Reyes' motion to suppress with regard to the search of his vehicle is due to be denied as moot, and the only remaining issue to be considered is whether the search of Armando-Reyes' apartment was in violation of the Fourth Amendment knock-and-announce requirement. As noted earlier, at the conclusion of the evidentiary hearing, the Court provided the parties an opportunity to brief this issue by establishing a briefing schedule, see [Doc. 121 at 61]; however, counsel for Armando-Reyes subsequently notified the Court that he did not intend to brief the issue and would simply rely on his supplemental motion, [Doc. 111], and the evidence presented at

---

[6] The parties submitted exhibits during the hearing, which will be referred to as "(Gov. Ex. ___)" for the government's exhibits and "(Def. Ex. ___)" for Cintora-Gonzalez and Armando-Reyes' exhibits.

7

the hearing. Accordingly, Armando-Reyes' motion to suppress the evidence seized as a result of the search of his apartment, [Doc. 111], is now ripe for ruling.

**1.** *Statement of Facts*

On February 2, 2012, Drug Enforcement Agency ("DEA") Special Agent Sean Cooper ("Agent Cooper") prepared an affidavit and application for a search warrant for 2550 Cumberland Blvd., S.E., Smyrna, Georgia, Apt. # 812 of the Walton Grove Apartment Complex and presented it to the undersigned Magistrate Judge. (Gov. Exs. 1-2). In the affidavit in support of the application, Agent Cooper relayed, among other things, that an investigation into a Mexico-based drug trafficking and money laundering organization involving the interception of wire communications led to the identification of Cintora-Gonzalez and Armando-Reyes as suspected drug suppliers, residing at the subject apartment. (Gov. Ex. 2 (Agent Cooper Aff.) ¶¶ 9-15); see also [Doc. 121 at 21]. During the course of the investigation, agents learned that Cintora-Gonzalez was upset with a customer over a drug debt owed to him and they intercepted communications on February 2, 2012, which revealed that Cintora-Gonzalez planned to harm the customer the following morning. (Gov. Ex. 2 ¶¶ 16-17); see also [Doc. 121 at 22]. Based on this information, agents initiated surveillance at the subject apartment and observed Cintora-Gonzalez, who was with a group of individuals, receive a telephone call from a customer, who then arrived at the

apartment shortly thereafter where he remained for approximately 15 minutes, and then exited the apartment and departed the area in a Ford Mustang vehicle. (Gov. Ex. 2 ¶¶ 18-19); see also [Doc. 121 at 22]. Georgia State Patrol officers initiated a traffic stop on the Ford Mustang shortly after it departed, and during a consent search of the vehicle, officers recovered suspected methamphetamine and marijuana from inside the vehicle. (Gov. Ex. 2 ¶ 20); see also [Doc. 121 at 22]. The driver of the Ford Mustang admitted, among other things, that he had purchased the narcotics from Cintora-Gonzalez at the subject apartment and that while he was there, he observed five individuals and six firearms in the apartment. (Gov. Ex. 2 ¶¶ 20-21); see also [Doc. 121 at 22-23].

Based on the facts presented in the affidavit and application, the undersigned Magistrate Judge signed the search warrant at 9:20 p.m. on February 2, 2012, and shortly thereafter, the agents proceeded to the subject apartment to execute the warrant. (Gov. Ex. 1; Def. Ex. 1); see also [Doc. 121 at 23]. Prior to executing the warrant, DEA Special Agent Brian Shields ("Agent Shields"), the co-case agent in this investigation, assembled a tactical team to execute the warrant and briefed the team on the situation, including that the subject apartment was a three-bedroom apartment with a kitchen, living room, and bathroom. [Doc. 121 at 23, 28]. The tactical team, which included approximately ten agents, then proceeded to the

subject apartment where Agent Shields positioned himself as the lead agent at the front door while other members of the team positioned themselves next to the master bedroom window. [Id. at 23-24, 28-29].

Agent Shields knocked loudly on the front door and announced, "D.E.A. Police, Search Warrant," but no one answered. [Id. at 23-24, 29-30]. Agent Shields knocked at least three times and after waiting more than ten seconds but less than a minute with no response, he radioed to the members of his team waiting outside the master bedroom window to breach the window and enter the apartment.[7] [Id. at 24-26, 29-30, 32]. As Agent Shields heard the glass from the window breaking, he and other members of his team then breached the front door and also entered the apartment. [Id. at 24, 26-27, 32]. As the agents entered the apartment, they again announced, "Police," and they then encountered three individuals in the living room and one individual in the kitchen area of the apartment. [Id. at 27, 30-31]. As the agents walked down the hallway, they tried to enter one of the bedrooms, but it was locked so the agents decided to breach the window to that bedroom from the outside

---

[7] Agent Shields testified that when no one answered the front door, he made a tactical decision to break the bedroom window, also known as "break and rake," in order to cause a distraction at the other end of the apartment away from the front door because he had information that the suspects in the apartment were armed and dangerous. [Doc. 121 at 24-25, 33]. He also testified on cross-examination that he really had no idea how much time had elapsed after he knocked before giving the order to breach the window and that it could have been less than ten seconds. [Id. at 34].

to gain entry and clear the room. [Id. at 27]. Once they had secured the apartment, the agents then proceeded to conduct a search and seized various items from the apartment, including narcotics, firearms, and counterfeit U.S. Currency, pursuant to the search warrant. See (Def. Ex. 1).

### 2. *Discussion*

Armando-Reyes argues that the agents violated the Fourth Amendment knock-and-announce requirement codified at 18 U.S.C. § 3109, by forcing entry into the apartment "without first knocking and announcing their presence." [Doc. 111 at 2]. Armando-Reyes therefore argues that any items seized from the apartment after the agents entered should be suppressed under the exclusionary rule. [Id. at 2-3].[8]

Pursuant to 18 U.S.C. § 3109, a federal or state law enforcement officer

---

[8] At the outset, the Court notes that Armando-Reyes "has the burden of establishing a prima facie case that a knock and announce violation has occurred under § 3109, and overcoming the presumption of [g]overnment propriety." United States v. Hromada, 49 F.3d 685, 689 n.7 (11th Cir. 1995) (citation omitted). At the evidentiary hearing, the Court expressed doubt that counsel for either Cintora-Gonzalez or Armando-Reyes had met their prima facie burden to show a violation, especially given that the record before the Court showed that the agents knocked and announced prior to entering the apartment. See [Doc. 121 at 3-4, 12-19]. Having failed to present any further argument on the issue, the Court finds that Armando-Reyes has not met his prima facie burden, but the Court will nevertheless address the merits of the arguments asserted in his supplemental motion to suppress, [Doc. 111].

> may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

18 U.S.C. § 3109; see also United States v. McZilkey, No. CR 107-052, 2007 WL 3046498, at *4 (S.D. Ga. Oct. 16, 2007), adopted at *1. That is, when executing a search warrant, "federal and state officers must provide the occupants of a house with notice of authority and purpose before breaking open any outer or inner door or window." United States v. Smith, Crim.A.No. 4-96-CR-15 HLM, 1996 WL 735569, at *2 (N.D. Ga. Aug. 27, 1996) (citations omitted). "If the occupants do not admit the officers within a reasonable period of time, the officers may be deemed to be constructively refused admittance, and they may then enter by force." United States v. Gay, 240 F.3d 1222, 1228 (10th Cir. 2001) (citations and internal marks omitted).

"Section 3109 . . . comports with the Fourth Amendment, which generally dictates that 'law enforcement officers [executing search and arrest warrants] must announce their presence and provide residents an opportunity to open the door.'"[9] United States v. Cole, Criminal Case No. 1:09–CR–0412–ODE–RGV, 2010 WL

---

[9] The Eleventh Circuit has held that while the Fourth Amendment does not explicitly set forth a knock-and-announce principle, the Amendment "incorporates the important common law requirement that police officers entering a dwelling must knock on the door and announce their identity and purpose before attempting forcible entry." United States v. Segura-Baltazar, 448 F.3d 1281, 1289 (11th Cir. 2006) (citing Wilson v. Arkansas, 514 U.S. 927, 930, 934 (1995)).

3210963, at *20 (N.D. Ga. Aug. 11, 2010) (second alteration in original) (quoting Hudson v. Michigan, 547 U.S. 586, 589 (2006) (citation omitted)). The statute "does not entitle a defendant to greater protections than does the Fourth Amendment." Segura-Baltazar, 448 F.3d at 1290 n.4 (citation and internal marks omitted).

Courts have held that there are no particular words or phrases officers must speak before entering. See Storck v. City of Coral Springs, 354 F.3d 1307, 1318 (11th Cir. 2003) (citation omitted) ("[T]he Fourth Amendment normally requires little more notice than a knock on the door prior to a forced entry pursuant to a lawfully issued warrant . . ."). "The focus of the 'knock and announce' rule 'is properly not on what magic words are spoken by police,' or whether the police rang the doorbell, 'but rather on how these words and other actions of the police will be perceived by the occupant.'" United States v. Pinson, 321 F.3d 558, 566 (6th Cir. 2003) (citation and internal marks omitted) (quoting United States v. Spikes, 158 F.3d 913, 925 (6th Cir. 1998)). "The proper trigger point, therefore, is when those inside should have been alerted that the police wanted entry to execute a warrant." Id. (citation and internal marks omitted).

Here, the record demonstrates that the agents approached the apartment, knocked loudly on the front door, and announced their presence. [Doc. 121 at 23-26, 29-30]. The agents had intercepted phone calls earlier that day indicating that

Cintora-Gonzalez, who was inside the apartment, planned to "either hurt, kill, or kidnap" an individual who owed a drug debt the next day, and shortly before approaching the apartment, the agents had received information that there were firearms and several individuals in the apartment. [Id. at 22-23, 33]. After no one responded to his knocking and announcement, Agent Shields and the other agents forcibly entered the apartment by breaching the master bedroom window and the front door. [Id. at 24-27, 29-30, 32]. Based on these facts, the Court finds that the agents did not violate the knock-and-announce requirement. See Segura-Baltazar, 448 F.3d at 1289; Smith, 1996 WL 735569, at *2.[10]

---

[10] While it is unclear how much time Agent Shields actually waited after his initial knock prior to giving the order to the other agents to breach the apartment, see [Doc. 121 at 25 (Agent Shields' testimony that he waited less than one minute but more than ten seconds), 34 (Agent Shields' testimony on cross-examination that it was possible he waited less than ten seconds)], courts have found that a delay of five or more seconds is normally sufficient under 18 U.S.C. § 3109, see United States v. Jones, 133 F.3d 358, 361 (5th Cir. 1998) (per curiam) (internal citations omitted) ("Generally, a delay of five-seconds or less after knocking and announcing has been held a violation of 18 U.S.C. § 3109," while "more than 5 seconds" is normally sufficient); see also United States v. Morris, 436 F.3d 1045, 1049 (8th Cir. 2006) (citations omitted) ("[E]ntry into the residence of a drug trafficking suspect, ten second after knocking and announcing at a reasonable evening hour, was constitutionally reasonable."); United States v. Pennington, 328 F.3d 215, 221 (6th Cir. 2003) (finding no violation where officers forcibly entered residence eight to ten seconds after announcing their presence); Hromada, 49 F.3d at 689 (officers executing arrest warrant for drug offense did not violate knock and announce requirement by waiting less than a minute after knocking to forcibly enter residence); United States v. Markling, 7 F.3d 1309, 1318 (7th Cir. 1993) (finding seven seconds was sufficient time to wait before using a battering ram to enter hotel room); United States v. Knapp, 1 F.3d 1026, 1030-31 (10th Cir. 1993) (finding 10 to 12

Even if the agents had violated the knock and announce requirement, Armando-Reyes' argument that the evidence subsequently obtained should be suppressed as a result is without merit, as the Supreme Court has refused to apply the exclusionary rule to knock-and-announce violations. See Hudson, 547 U.S. at 599 ("[T]he social costs of applying the exclusionary rule to knock-and-announce violations are considerable; the incentive to such violations is minimal to begin with, and the extant deterrences against them are substantial-incomparably greater than the factors deterring warrantless entries . . . . Resort to the massive remedy of suppressing evidence of guilt is unjustified."); see also United States v. Farias-Gonzalez, 556 F.3d 1181, 1187 (11th Cir. 2009) (citing Hudson, 547 U.S. at 596, 599); United States v. Neth, No. 6:09-cr-210-Orl-19GJK, 2010 WL 1257695, at *9 (M.D. Fla. Mar. 30, 2010) (alteration, citation, and internal marks omitted) ("Suppression is not a remedy for a violation of the knock-and-announce rule."). Thus, the evidence should not be excluded on this basis as Armando-Reyes "cannot parlay any violation of the knock-and-announce requirement into suppression of evidence." United States v. May, Criminal No. 10–0125–WS, 2010 WL 2985899, at *3 (S.D. Ala. July 27, 2010); see also United States v. Clark, No. CR411–349, 2012 WL 2317622, at *1 (S.D. Ga. June 18, 2012), adopted by 2012 WL 2792258, at *1 (S.D. Ga. July 9, 2012).

---

seconds was sufficient to wait).

Accordingly, it is hereby **RECOMMENDED** that Armando-Reyes' supplemental motion to suppress, [Doc. 111], be **DENIED**.

**C.** **Conclusion**

For the foregoing reasons and cited authority, Cintora-Gonzalez's motion to withdraw, [Doc. 129], is hereby **GRANTED** and his second motion to suppress, [Doc. 110], is terminated, and it is **RECOMMENDED** that Cintora-Gonzalez and Armando-Reyes' motions to suppress, [Docs. 91, 98, 99, & 111], be **DENIED**.

There are no other pending matters before the Magistrate Judge, and the undersigned is not aware of any problems relating to the scheduling of this case.

**IT IS THEREFORE ORDERED** and **ADJUDGED** that this action be and the same is hereby, certified Ready for Trial as to all remaining defendants.[11]

**IT IS SO ORDERED** and **RECOMMENDED**, this 10th day of August, 2012.

*Russell G. Vineyard*
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

---

[11] Defendants Edgar Cintora-Gonzalez, Israel Edgardo Revera-Pacheco, and Brenda Perez have entered guilty pleas and are awaiting sentencing. See [Docs. 103, 105, 113, 126]. Thus, Cintora-Gonzalez, Armando-Reyes, and Victor Hugo Morales-Avila are the only defendants expected to proceed to trial in this case.